OPINION of the 'court, by
Ch. J. Boyle.
This ivas a writ of right, in which the appellant was the de-mandant, and the appellee the ter. ire in possession. The precipe, the count, the plea and the replication are in the forms prescribed by the “ act for reforming the mode of proceeding in .writs of right.” The jury found a special verdict, from which it appears that each party claimed title to the hind in controversy under a patent issued to hini from ihe commonwealth, and that the patent of the demandant was of an elder date than that of the tenant, but u that the demandant never fyad the-actual occupancy of the land, nor had he seisin or possession thereof, otherwise than what was vested hi him by the survey and patent.”
The court below gave judgment for the tenant, and the demandant has appealed to this court.
Two questions arise on the verdict of the jury in this Case.
1st, Whether it was necessary for the demandant to prove that be had been actually seised ?
2d, Whether the patent from the commonwealth, .without an actual entry upon the land, invested hiña with an actual seisin ?
The first question divides itsélf into two inquiries— 1 st, Whether by the rules of the common law it was incumbent upon the demandant to shew an actual seisin ? and, 2d, How far the rules of the common law have in this respect been changed by the act for “ reforming the inode of proceeding in writs of right ?”
That at common law it was necessary for the deman-dant to allege a seisin in himself or his ancestor, is too clear to admit of a doubt—F. N. B. 5, 10—-1 Reeves’ Hist. F.ng Law 428 9- — Litt. sec. 514—Co. Litt. 293 a—Booth 93-4—3 Black. Com. 194-5. And it is no less incontrovertible, that the seisin must be an actual One, and not merely a seisin in law. This point is abun-dántly established by the form in which the demandant was required to allege a seisin ; that is, by taking the profits, which in technical language were called the ex-piéis. The precedents, from the most ancient to the HiSst modern, shew that this was the invariable mode in *58 which seisin was alleged —See the forms given in Booth from 93 to 110—3 Wilson 419— 3 Black. Com. appendix No. 1. As the explees or profits can be taken only by one having the actual seisin or possession, this form of alleging seisin proves that actual seisin was necessary. But this point is one the correctness of which does not depend merely upon the inference deducible from the forms of pleading : it is explicitly asserted by every book of authority in which the subject is mentioned— Booth 111,112—1 Reeves’ Hist. Eng. Law 397, 426, 427— 4 Co. Rep. 9—6 Com. Dig. 271—2 Saund. Rep. 45 b.
That which is thus necessary to be alleged by the de-mandant, must consequently be equally necessary to be proven by him. The modes in which the tenant might put the demandant upon the proof of seisin, are various.
Anciently no seisin could be alleged, but from the time of Henry I. that being the time limited for bringing a writ of right, the limitation was afterwards changed to the time of Henry ÍI. and ¿gain to that of Richard I. When this mode of limitation prevailed, it was necessary for the demandant to count upon a seisin in himself or his ancestor, in the reign of some particular king, that it might appear to be within the time limited for suing out such writ. But as the seisin in the reign of any particular king could be no otherwise material than as it would shew that the writ was brought within the time of limitation, proof of a seisin within that time, although it might be in a reign different from that alleged in the count, would seem to be sufficient to establish the demandant’s right. The seisin, therefore, in the king's reign mentioned in the count, was not tra-versable ; and for the same reason it did not come properly within the consideration of the grand assize who were to try the mise joined between the parties. But the tenant might, as a matter of favor, when the mise was joined, put the demandant to proof of the seisin in the time of the king mentioned in the count, by praying án inquiry into that fact and tendering a demi mark ; and if it happened that the demandant or his ancestor was not seiáed in that reign, he would fail through this error the same as if he had never been seised —See Littleton, sec. 514— Booth 97.8—1 Reeves’ Hist. Eng. Law 492.
*59 Sinpe the statute of 32 Henry VIII. limiting the time pf bringing a writ of right to sixty years, it is held to be sufficient to allege a seisin within that time, without mentioning the reign of any particular king ; but if there be mention made of the king’s reign, the tenant can take no advantage of it, but as formerly by the ten-i der of the demi mark.
But although the seisin in the reign mentioned in the count was not traversable nor properly involved in the mise joined upon the mere right, and could only be inquired into as a matter of favor in the anomalous and extraordinary mode we have mentioned, yet the tenant might plead that the demandant or his ancestor was never seised, and after the statute of the 32 Henry VIIL he might traverse the seisin within sixty years — Booth <?8-9 and 113. It is pretty evident too, that where there had been no seisin by the demandant or his ancestor, or where there had been no seisin within the time limited for bringing a writ of right, that the tenant might take advantage of it upon the mise joined upon the mere right. For every matter, except a collateral warranty, which might be pleaded in bar, might also be given in evidence on the mise joined upon the right— 3 Wilson 420 — Booth 112.
The rule requiring an actual seisin, is obviously founded upon the principle that such a seisin is a necessary requisite to the consummation of the demandant’s right. In the title to lands there are several gradations or steps, as the possession, the right of possession, and the right of property ; and it is in the union of these, that a complete and perfect title consists. If the right of possession be joined to the right of property, it is then denominated a double right, jus cluplicatum or droit droit; “and when (as Blackstone observes) to this double right is also united the actual possession ; when there is, according to the expression of Fieta, juris et seisirue conjunction then, and then only is the title completely legal — 2 Black. Com. 202.
This principle did not, we apprehend, grow out of the ceremony of livery of seisin, as was contended by the counsel for the demandant. In leases for years that ceremony was unnecessary, yet it is held that an actual eritry is requisite to vest the estate in the lessee ; for the bare lease gives him only a right to enter, which is *60 called his interest in the term, or inter esse termini ; and when he enters in pursuance of that right, he is then, and not before, in possession of his term and complete tenant for years — Co. Lit. 40 b — 2 Black. Com. 318. So in the case of a devise, where livery of seisin is impossible, the devisee is lvcld not to have sCich a complete title, before an actual entry upon the estate devised, as to enable him to maintain a writ of right. These examples, to which others might be added, were others necessary, are sufficient to shew that the doctrine of livery ofseisin did not give birth to the principle which makes an actual seisin or possession an essential ingredient in the constitution of a complete and perfect title to land. This idea is further fortified by the consideration that the principle in question is not found to be peculiar,to the common law. Iu the Roman law, a perfect title, ox plenum dominium, as it was/Cafled, was not said to subsist, unless where a man had both the right and the corporeal possession, which possession could not be acquired without an actual seisin or entry into the premises, or a part of them, in the name of the whole. The words of the civil law, as cited by Blackstone from the code, are “ traditionibus dominio rerum, non nudis pactis, transferuntur" — 2 Black. Com. 316, note 2.
In fact this principle has its foundation in nature, and is therefore prior in the order of time to any positive institution. For all the writers upon natural law agree that occupancy, which is but another name for seisin or possession, not-only gave the right to the temporary use, but was the origin of the right to the permanent property in land. To ascribe this principle then to the ceremony of livery of seisin, would be reversing the order of nature. It may have been, and probably was the cause of introducing livery of seisin, but it cannot be the effect of that ceremony. Properly speaking, it is possession that perfects the right, and livery of seisin is but one of the means which the law has appointed for attaining possession.
The principle, therefore, upon which the rule requia-ing an actual seisin in writs of right is founded, not having grown, as was supposed in the argument, out of the ceremony of livery of seisin, the inference attempted to be deduced from that supposition, in favor of the right of the demandant to recover without shewing a» *61 actual aeisin, in cases where livery of seisin is unnecessary,-cannot be admitted : for as the premises are fallacious, the conclusion must inevitably fail..
It results, therefore, clearly, that upon the principles of the common law, it was incumbent upon the deman-dant in a writ of right to allege and prove an actual seisin. ■ .
How far the “ act for reforming the mode of proceeding in writs of right,” has in this respect changed the principles of the common law, is the next subject of inquiry.
It seems to admit of no doubt, that the act has dispensed with the necessity of alleging seisin ; the form of the count given bv the act containing no such allegation. It is from this circumstance also inferred that proof of seisin cannot be required ; but this inference will not appear to be warranted, if the whole context of the act be taken into consideration. It was manifestly not the intention of the legislature to affect the right of the parties, but to facilitate and expedite the mode of proceeding. To dispense, however, with the proof of seisin, would not be a mere change of the mode of proceeding, but would in effect be dispensing with proof of that which theretofore had been deetned an essential requisite in the right of the demandant. This is abundantly apparent from what has been already observed. But what is altogether conclusive upon this subject is the provision of the act which declares “ that at the trial every matter may be given as evidence which might have been specially pleaded.” Now as we have before seen that the tenant might plead specially that there was either no seisin, or no seisin within the time allowed for bringing a writ of right, it necessarily follows that the want of seisin may be taken advantage of on the trial under this act. This construction is strengthened and confirmed by the provisions of the statute of limitations. By that statute no person can maintain a writ of right, upon the seisin of his ancestor or predecessor, but within fifty years ; and upon his own seisin, but within thirty years next before the test of the writ. That the seisin required by the statute is an actual seisin, is clearly established by the authorities before cited, and especially by the case in 4 Co. Rep. f. 9. To dispense with proof of"seisin, would be incompatible with *62 its provisions. It would reduce the statute to a dead »n(l render it wholly inoperative : for if the de-mandant be not bound to prove a seisin at any time, he cannot be bound to prove a seisin within the time prescribed by the statute. A construction attended with such consequences, is evidently inadmissible : for these statutes being made in pari materia, ought to be con-strqed together, and such an exposition ought to be given to them as to render both operative and efficient.
But it was contended that the commonwealth was seised within the time allowed by the statute, and that the patentee might avail himself of her seisin as his predecessor. Although this argument was urged with apparent gravity, we can scarcely bring ourselves to believe it was seriously expected to have any influence upon the minds of the court. The commonwealth is certainly seised and cannot be disseised of the unappropriated lands within the bounds of the state ; but it is impossible that she can be the predecessor of the paten-tee, according to the legal acceptation of the term. Predecessor and successor, like ancestor and heir, are correlative terms- The former are exclusively applicable to the relation between artificial or political persons, as the latter are to the relation between natural persons ; and the relation in either cáse cannot exist unless the ancestor or predecessor be dead or extinct. The commonwealth, therefore, cannot, while she exists, be the predecessor of any one, no more than a natural person can, while still living, be the ancestor of another.
The relation of seller and purchaser may, and indeed does exist between the commonwealth and the patentee. But it is a settled principle, that the purchaser cannot maintain a writ of right upon the seisin of the seller —-Co. Litt. 293 a—2 Saund. 45, note 4.
It is clear, therefore, that the “ act for reforming the mode of proceeding in writs of right,” though it has dispensed with the necessity of alleging seisin, has not dispensed with the necessity of proving it.
The remaining question to be investigated, is, whether the patent from the commonwealth invested the demandant with an actual seisin ?
This question occurred in the case of Steward's devisees vs. Crawford, (2 Bibb 412) and was then decided *63 in the negative. In that case it was contended, as it has been in this, that the act concerning conveyances having made livery of seisin unnecessary, and transferred the possession to the use, a patentee had thereby a seisin or possession in fact. But whether we regard the reason which produced the enactment of that provision, or its literal import, the conclusion will be equally clear, that the patentee is not embraced by it. That provision is in substance the same as the statute of Henry VIII. usually called the statute of uses. Prior to that statute, lands or other corporeal hereditaments could be passed from one individual to ano;her by feoffment and livery of seisin only. I he manifest object of that statute, as well as of the provision in our act, was to dispense with the necessity of livery of seisin, in cases where that ceremony was previously necessary; and by the plain and literal import of our statute, its operation is confined to such cases only. But the ceremony of livery of seisin was not necessary in a grant or conveyance by letters patent, and it therefore follows that the patentee cannot claim a possession under the provision of that act. But were the patentee within the provision of the statute, it would not result that he was invested with an actual possession.
The statute of uses in England has never been construed to transfer an actual seisin ; for it is physically impossible that a statute should give any more than a legal seisin, or seisin inlaw. Itis therefore laid down that the bargainee, or cestui que tise, under the statute, cannot maintain trespass before an actual entry upon the land —6 Com. Dig. 390—Carth.66—Gilb. Uses 230—2 Fonb. 12.
It cannot admit of a doubt, that at common law the patentee was not actually seised before he made an entry upon the land : for a seisin in fact can only be attained by an actual entry upon the land, or a part of it in the name of the whole — 5 Com. Dig. 271. The patent gives a right of entry, which, until tolled by time or other circumstance, will authorise the patentee to acquire an actual seisin by an entry upon the land ; but until he makes such an entry, it is a contradiction in terms to say that he has an actual seisin or possession. The author of “ The Grounds and Rudiments of Law and Equity,” speaking of descents which will or will *64 not toll an entry, says that “ a difference is to be takes between a right for which the law giveth remedy by-action, and á title for which the law giveth no remedy but by entry only.” In the former case, a descent will toll an entry ; but where there is no remedy by action, the title of an entry will not be taken away. Amongst other examples of the latter description, he gives the case of a devisee and of the king’s patentee before entry : “ and the reason,” he observes, “ of this difference, is because there is but a title, and no remedy by action in these cases” — Grounds and Rudiments 50, 51. The same doctrine is laid down by Co. Lit. 240 b. These authorities not only prove that the patentee before entry is not actually seised, but they likewise demonstratively evince that he cannot maintain a writ of right without such a seisin.
Upon the whole, therefore, we feel ourselves bound to conclude from the view which we have been at present able to take of the subject, that it was incumbent upon the demandant to prove an actual seisin, and that the patent is not of itself, without an actual entry upon the land, sufficient evidence of such a seisin. It may not, however, be improper to remark, that as the subject is a novel one, and of immense importance to the country, we shall attend with more than ordinary satisfaction to any argument or authorities which may tend to lead to a different conclusion, if presented while the case is still within the power of the court. But from the length of time the question has been depending before the court, as well as from other circumstances, it seems proper that we should no longer delay giving that judgment which the present convictions of our understandings induce us to believe correct.
The judgment must therefore be affirmed, with costs.*
*65 A petition for a re hearing was presented, and after-zvards, on the ¾3 d day of December 1814, the following opinion was delivered by Ch. J. Boyle.
THE main positions attempted tobe maintained in the petition for a re-nearing, as well as on the re-argu-
*66 ment of this case, are substantially the same as those relied on in the original argument, and are — 1st, That it is not necessary for a demandant iu a writ of right to shew an actual seisin ; and 2d, If it be necessary, that *67 the patentee of the commonwealth is, without entry upon the land, so seised. ' ' T , , , ...
, , ... It is no longer a question, whether, upon the principles of the common law, it was necessary for the de-
*68 mandant in a writ of right to shew an actual seisin in himself or his ancestor, to enable him to recover. Such is now admitted on all hands to be the inflexible doctrine of the common law. As the common law has been *69 adopted as a part of the code of this state, it must necessarily follow that this.doctrine is in force and constitutes the rule of decision here, unless it has been either expressly or virtually repealed by some statutory *70 provision. That it has been expressly repealed, is not pretended; but its virtual abolition has been attempted to be inferred from the act of 1786, reforming the method of proceeding in writs of right, because the form *71 of the count given in that act has omitted the allegation bf seisin.
In the opinion formerly delivered in this case, this argument was repelled by remarking that it was the intention of the legislature to reg'ulate the mode of proceeding, and not to change the nature of the facts necessary to be proven. That intention was then, and still is supposed to be sufficiently manifested, not only from the general context of the act, but more especially from the clause allowing any special matter which might have been pleaded to be given in evidence. But it is contended that such a construction would render the act useless and nugatory ; and we are told of the exalted characters of its authors, and reminded of the gross absurdity of charging upon them such an unmeaning and inoperative law. Though it is not our business to eu-logise the authors of this act, we must be permitted to disclaim the intention to derogate from their wisdom either as lawyers or statesmen ; nor do we admit that we have done so in the construction we have given to the act. Without ascribing to them an intention to abolish the rule requiring seisin, or supposing that they acted upon the idea that it was abolished, we can see sufficient rea *72 son for the passage of such a law, to do justice to the motives and intelligence of its authors. In framing a count at common law, the difficulty of deducing the descent from the ancestor who was alleged to be seised, was in many instances very great; more especially when the descent was in the transverse Or collateral line. And if in the count any one was omitted in the descent, if it commenced with one who never was in seisin, or if there was any error in the person or the name'of any one mentioned in the descent, the demandant necessarily failed — 1 Reeves’ Eng. Law 431. To avoid difficulties of this sort, and the failures that necessarily giew out of them, was, no doubt, the object of omitting the allegation of seisin in the form of the count given in the act of 1786. For the other changes introduced by that act, the delay and expense necessarily incident to the common law mode of proceeding, would be sufficient, rationally to account. Put an indispensable reason for reforming the mode of proceeding, is to be found in the nature of the qualifications of those who composed the grand assize, and who alone could try the mise joined upon the mere right. Regularly they were required to be knights gladiis cinctis, and in their absence esquires only could be substituted in their place. But as all ranks were by the abolition of the regal government reduced to the level of plain citizens, it is evident when the mise was joined upon the mere right, that a trial could not be had. It cannot then be believed that the construction given to the act by the former opinion of this court, can imply the slightest imputation of the want of wisdom in those who passed it.
But it is contended that the rule requiring seisin is founded upon feudal principles, and that it is inapplicable to land titles in this country, which are in their nature allodial.
Were it admitted that the rule was founded upon feudal principles, the inference attempted to be deduced from thence could not be justified. There are no rules of the common law which can be more clearly traced to their feudal origin, than those which regulate the course of descents ; yet we arc still daily in the habit of applying those rules to titles in this country, in cases where the ancestor died before the passage of the act altering the course of descents ; and had that act not been pass- *73 éd, there can be no doubt that those rules would havé been universally, regarded as the criteria of right in every case of descent. So the necessity of livery of seisin ■to convey a freehold estate, is admitted to be founded upon feudal reasons, but it cannot be pretended that' such ah estate could have been otherwise conveyed at this day, if there were n« statutory provision to autho-rise it. These examples, to which many others might be addedj are sufficient to shew that the mere circumstance of a rule being founded upon the principles of the feudal law, is no evidence of its not being in forcé in this country. But the position that the rule in Question was founded upon feudal policy, canhot be conceded. It was gratuitously assumed in the argument, without the citation of any authority in support of it, and it is confidently believed that there exists no such authority.
But against the doctrine that seisin is not necessary to be shewn in a writ of right, an argument which has not been answered, and which it is still thought is unanswerable, is afforded by the ¿statute of limitations; That statute retires a seisin within a limited time before the teste ot the writ. To dispense with the necessity of seisin, is therefore utterly irreconcileable with this provision : for, as was remarked in the former opinion, if seisin be not necessary to be shewn, it cannot be necessary to be shewn within the time limited by the statute. And if this doctrine be correct as to the pa-tentee, because his tide is allodial, it is equally so as to his heir, his devisee or his alienee : for the nature of the title cannot be changed by passing to them. It is in their hands as much allodial as it was in the hands of the patentee. As, therefore, the whole lands of the state must be claimed by .one or other of these descriptions of persons, there is no case, if this doctrine bé true* in which the statute can operate. It will thus become a lifeless lettef, a mere incumbrance in the statute book, and possession for no length of time can give any repose or security to titles. It cannot be pretended, that the seisin required by the statute, is not an aytuSl seisin. The cases cited in the former opinion completely negative such an idea, and the whole current of authorities, from the first enactment of the statute till the present time, runs in the same way.
*74 If then actual seisin be necessary to maintain a writ of right, it remains to inquire whether the patentee is so seised before he has entered upon the land ?
There are but two hinds of seisin or possession known to the law~a seisin or possession in fact, and a seisin or possession in law. The former is gained by an actual entry upon the land ; the latter is where there is no such actual entry made, but the law, for certain purposes, supposes a fictitious possession. The one is therefore founded upon fact, and the other upon fiction. The one is real, and is cognisable by the senses ; the other is ideal, and exists only in contemplation, or construction of law. Besides these, the law not only re-cognises no Other, but it is impossible that any other should exist. The mind cannot conceive the idea of a third species of possession, nor can any combination of words express such an idea. To say that a person may be seised in deed, or in fact, by construction of law, is 'an assertion which ccnvevs no distinct meaning. It is in truth inconsistent with itself. For if a person be seised in deed, or in fact, then he is not seised by construction ; and if he be seised by construction only, he is not seised in deed. Where the fact exists, the fiction must be at an end ; and if the fact do not exist, the possession can be nothing but a fiction. It is plain then that the patentee can only be seized either in fact or in law. When he has by himself or another entered upon the land, he has thereby become seised in fact; but before he has made such an entry, he can only be seised in lazv.
The position, therefore, that he is seised in fact, without an actual entry upon the land, is utterly inadmissible. It not only annihilates all distinction between fiction and fact, but while it assumes that the patentee is in actual possession, it in terms admits that he is not so ; thus involving the greatest of all possible adsurdities, that the same thing may be., and not be, at the same time.
According’to this doctrine, a man may be in the actual possession of a tract of land in this country, not only where he has not in fact entered upon the land, nor any one for him; but when he has never been within the limits of the commonwealth. He may be in the remotest region of the earth, among the antipodes if you please, and still at the same time in the actual possessioa *75 of land here. Before we can admit such a doctrine, we must be prepared to abandon the evidence of our senses, and to deny the first principles upon which all science is founded.
The cases referred to in the argument, in support of this doctrine, seem clearly to be misunderstood, or to be misapplied. It cannot be admitted, as was contended, that the bargainee, under the statute of uses, was in acr tual possession before entry. If he were so, he certainly could maintain trespass ; but it is settled that he cannot have trespass before entry — Cart. 66 — 6 Com. Dig, title trespass, B 3. And the author of the “ Treatise upon Equity,” observes, emphatically, that actual possession is not in cestui que use under the statute, neither can he maintain an action of trespass ; for it is impossible an act of parliament should give any thing more than a civil seisin —2 Fonb. 12, for which is cited Gilb. Uses 23Q.
The case referred to in the argument, in which it is held that where lands are in lease for years, and the re-versioner dies, his heir will be actually seised without entry, is admitted to be law. But in that case there is an actual possession of the tenant, and his possession is the possession of the heir, under whom he holds ; and it never was denied that a man might acquire of hold the actual possession by another, as well as by himself; for that which a. man does by another, he does by himself, according to the maxim qui facit per alium facit per se.
The application of the case of the psssessio fratris, which was mentioned, is not perceived ; but if it applied, it would not prove what was intended by it: for, to constitute a possessio fratris, there must be an actual seisin; a pedis possessio anda mere seisin in law is, not sufficient.
The case cited to prove that in England-a patent from the crown amounts to a livery in law, is also admitted to, be sound law: but every one who has any pretensions to legal information, must known that a livery in law does not give an actual possession until entry is made upon the premises. That case, so far from justifying an inference that a patentee is, without entry upon the land, actually seised, demonstratively evinces that he is not so seised, and is in perfect consonance with the doc* *76 trine quoted in the former opinion frqm Coke upon Lit-tie ton, and the Grounds and Rudiments of Law. '
, , . The position then that a patentee is actually seised before he has entered upon the land, is not only preposterous in principle, but unsupported by precedent.
If, indeed, the legislature had, in the law authorising grants of land to be made, expressly declared that the patentee, without entry, should be actually seised, absurd as the thing would have been, the court would have been bound so to have pronounced the law. But the legislature have made no such declaration, nor have they used any expression which is susceptible of such an exposition. But to learn what the law is, our attention is directed, not to the law itself, but to the state of the country. That, we are told, was an uninhabitable wilderness, a gloomy forest, the haunt of wild beasts, and environed with savages. This certainly affords no argument to shew what the law is, nor clots it even prove that the law ought to be such as is contended for. Laying aside all consideration of the absolute incongruity and absurdity of such a law, there can be no reason for it or utility in it. While the country continued to be an uninhabitable wilderness, it could be of no advantage to the claimant that he should be declared by law to be ip the actual possession ; and when the country became inhabitable, he might acquire the possession without the aid of such a provision, lay an actual entry upon the land, the only way in which nature has ordained that possession can be acquired, This he might do, not only when the country became inhabitable, but for twenty years after the tract claimed by him shall have been occupied by another adverse claimant. Whether, therefore, the country was inhabitable or not, when the grant was made, must be a matterof perfect indifference.
From the foregoing opinion, Judge Logan dissents ; but the court being equally divided, the judgment of the court below must be affirmed with costs.

 This queftion, with others, was adjourned from the feventh circuit and Kentucky djftridt to the Jupíeme court of the United Stales. The deci-iion of that court upon this queftion, as well as upon the others, bear upon the interefts of fuch a large portion of the citizens of this ifate, that I have thought proper to pubiifh that opinion at large.
SUPREME COURT OF THE U. STATES—February Term 1814.
John Green vs. John Liter, &c.
THIS is a writ of right, brought by the demandant againft the tenant, to recover feifm of a large trail of land fet forth in the count, At a trial in the *65 circuit court for Kentucky diftri&, feveral íjueftiofts arofe. apon which thtí court were divided, and thefe queftions are now certified for the opinion of this court. '
I. Have the circuit courts of the United States jurifdictkm in a writ of right, where the land claimed by the demandant is above the Value of five hundred dollars, but the tenement held by the tenant is of leía value than five hundred dollars ?
As to the firft quefticn, weare fatiified that the circuit court had jurifdic-, tion of the eauie. Taking the nth and 20th fe&iona of the judicial ail of 1789 in connexion, it is clear that the jurifdi&ion attaches, where the property demanded excteds five hundred dollars in value $ and if upon the trial the demandant recover ids, he is not allowed his cofts, but at the difcretion of the court maybe adjudged to pay cells.
II, Can the demandant join in the writ and count feveral tenants, claiming under feveral diílir¡&, fepárate and independent original titles, all of which interfere with the land o! the demandant ? Jt he can, muft he demand of them the tenements they feverally hold, or may he demand a tenement to the extent of his own title ? If it computes a part not claimed or held by any of the faid tenants, may he demand in his count againil the laid feveral tenants, his own tenement j or muft hé demand of each tenant the tenement' he feverally holds ?
As to the ftcond queftlon, we are of opinion that at common law a writ o£ right will not lie, except againil the tenant of the freehold demanded }(a) if there are feveral tenants claiming feveral parcels of land by diftin& titles, they cannot lawfully be joined in one writ, and if they are, they may plead in abatement of the writ. If the demandant demands againil any tenant more land than he holds, he may plead non tenure as to the parcel not holden $ and this plea by the ancient common law would have abated' the whole writ.
But the ftatute 25 Edward 3d, 16, which may be confidered as a part of our common law, having been in force at the emigrationof our anceftors, cured the defeél, and declared that the writ ihould abate only as to the parcel' Whereof non tenure was pleaded and admitted or proved. Jn fa& the a& of Virginia of 1792,(b) ch 125, which is in force in Kentucky, ena&s fubftari-tiaily the fame proviüon as the ftatute of Edward.
But it is fuppófed in argument, that the a& of Kentucky to amend proceedings in chancery and common law, which provides that if^he plaintiff at law ihall prove part of his demand or claim fee up in his declaration, he ihall not be nonfuited, but ihall have judgment for What he proves,’ entitles the deman-dant in this cafe to join parties who hold in feveralty by diftift& titles. To this doctrine the court cannot accede. At common law, in many inftances, if the party demanded in his wye more than' he proved was his right, be loft his a&ion by the falfity of his writ. It was to cure this ancient evil, that the a& of Kentucky was made y it enables the party to recover, although he ihould prove only part of the claim in his declaration 5 but it dees not intend to enable him to join parties in an a&ion who co\ild not be joined at the common law. it could no more entitle a demandant in a real a&ion to recover againft federal tenants, claiming by diftin& and feparate titles, than it could entitle a plaintiff to maintain a joint a&ion of aflumpfit, where the concta&s: were feveral and independent. Infinite inconvenience and miféhief would refult from fuch a conftru&icn, and we Ihould not incline to adopt it, unlefs it were unavoidable.
*66 III. Can the tenant under the faid aft plead in abatement, either in the pleas of, non tenure, joint tenancy, foie tenancy, feveral tenancy, or never tenant of the freehold, or any of them, or other pleas in abatement, neceffary to his cafe 5 or is he compellable to j ¡in the n.ifein the form pretcribed*by the faid aft: if he can, when, or at what ftage of the proceedings ? If he cannot, may he give it in evidence on the mife joined, under the faid aft ?
As to the third queftion, it is clear at the common law, that non tenure, joint tenure, foie tenure, and feveral tenure, were good pleas in abatement toa wric 'rf right, but they could only be 'pleaded in abatement j for the tenant, by joining the mife, or pleading in bar, admitted himfelf tenant of the freehold. buch pleading in bar was an admiffion that he had a capacity to defend the full, and he was eftopped by his own aft from denying it. The aft of Virginia of 17*6, (c) cVy. 59, reforming the proceedings on writs of right, wai not intended to vary the rights or legal predicaments of the parties *. it did not intend therefore to change the raiure and effect of the pleacings} and notwkhftanding that aft, the tenant Hull ítii l have the full benefk of the ordinary pleas-in abatement.
It is true that the aft provides that the tenant at the trial, may* on the general iffue, give in evidence any matter which might have been ipccially pleaded ; but this provifbn is manifeftly confined to matters in bar. It would be abiurd to fuppofe that the legiflature meant to give a mere exception in abatement, the lull tffeft of i perfeft bar on the merits $ which would be the cafe, if fuch an exception would authoiife a verdift for the tenant, on ifiue joined on the mere right. The time and manner of filing the pleadings muft of coürfe beleft to the eftablilhed praftice and rules in the circuit court,
IV. May the tenant under laid aft plead fpecially any matter of bar, or muft he join the mife without other plea in the form preferibed by the faid aft ?
As to the fourth point, we are of opinion that under the aft of Virginia of 1786, the tenant may at hiseleftion plead any Ipecial matter m bar in a writ of right, or give it in evidence on the mife joined. Thfe aft is not deemed com-pulfive but cumulative.
V. Can a demandant who has regularly obtained a parent from the land office of the ftate of Virginia, for the land in conteft, under the aft of the Virginia legiflature paffed in the year 1779, commonly ftyled the land law, maintain a writ of right under fuch patent againft a perfon claiming and holding pofftffion under a younger patent from the laid ftate, without fi. ft having taken aftual pofleffion of the land, under his patent, and held by the tenant ? If fee can maintain a writ of right without fuch proof in the general, can he do it where his light of entry is baned by an aftual advene pcfiefiion of twenty
The fifth queftion is that which has been de%med mr;ft important, and to that the ceunfel on each fide have directed their efforts with great ability. It is clear by the whole current of authority, that aftual feifin or feifin indeed, is at the common law neceffary to maintain a writ of right 5 nor is this peculiar to aftions on the mere right 5 it equallj applies to writs of entry, and the language of the counfel in both cafes is, that the demandant or his anceftora . was within the time of limitation feized in his uemefne as of fee, See. taking the efplees, &c It is highly probable that the foundation or this rule was laid in the earlieft rudiments of titles at the common law. It is well known that in ancient times no deed or charter was neceffary to convey a fee fimple : the title, the full and perieft dominion was conveyed by a mere livery of feifin in *67 the prefence of the vicinage. It was the notoriety of this ceremony, performed in. the presence or' his peer*, that gave the tenant his fecdal inveiliture of the inheritance Deeds and charters of feoffment were of a Inter age, and were held not to convey the eftdte irfel.', but only to evidence the nature of the conveyance Thefolemn oí livery and leitia was abfolutth neceffary to produce a perftdt title, or as fleta calls it, juns et feifree corjunSh. But whatever may have been its origin, the rule as to adfcuai leifm has longtflnce become an inflexible dodtrine of the common law.
It has been argued that the ad of Virginia of 17S6, ch. 59, meant in this refpech to change the dodtríne of the common law, becaufe that adí has given the form of the count m a writ of right, and omit» arfy allegation of feifln and taking cfplees. There is certainly fome countenance in the adt for the“argu-inent, but on mature confideration we are of opinion that it cannot prevail* The form of joining the mife in a writ of right is alfo given in the fame adl, and thatform includes the fame inquiry, viz. “ which harh the greater right ?” as in the forms at common law it woul; feem to follow that the leglflature did not mean to change the nature of the fadts which were to be inquired into ; but only to provide a more fummary mode of proceeding, The claufe in ihe fame ad!, allowing any fpecial matter to be giym in evidence on the mife joined, may alfo be called in aid of this conflrudlion s that claufe certainly fliews that ic was not intended torelieve the demandant from the effect of any .exifting bar y and want of feifm was at the common law a fatal bar. The ftatute of limitations of Virginia of December 19th 1792, ch 76(d),, which as to this point ísa revifal of the old ilatute, limits a writ of right upon an-ceftoral feifln to fifty years, and upon the demandant's own fe*fm to thirty years next before the td£e of the writ* It is therefore incumbent upon the demandant to prove a feifia within the time of limitation, otherwise he is without remedy ; and if fo, it muft be involved in the iffue joined on the mere right. We are therefore of opinion that the adt of 1786 did not mean to change the nature of the inquiry as to the titles of the parties, but merely to remedy fome of the inconveniences in'toe mode of proceeding*
If then an adfcual feifln, or feifln in deed, be neceffary to be proved* it becomes material to inquire what conftitutes fuch a feifln. It has been fuppo-fed in argument that an aftual entry under title and perception of tfplees were neceffary to be proved in order to fhew an aihial feifm 5 but this is far, from being true seven at the common law. There are cafes in which there is a conftruftive feifln in deed, which is fufficient for all the ^urpofes of a&ion ¡n legal intendment.
In Hargrave’s note (3) Co. Litt. 29 a(e), it isfaidthat an entryisnotal-ways neceflfaryto givea feifn in deed 5 for if the land be in leafe for years, curtefy may be without entry, or even receipt of rent. The fame is the doctrine as to feifln in a cafe of ptfleffio fratis. So if a grantee or heir of feveral parcels of land in the fame county, enter into one parcel in the name of the whole, where there is no conflicting pofleffion, the law adjudges him ⅛ the actual feifln of the whole — Litt. fee 417, 418- In like manner if a man have a title of entry into lands, but dares not enter forfear of bodily harm, and he approach as neai the land as he dare, and claim the land as his own, he hath prefently by fuchi claim a poffeflion and feifln in the lands, as well as if he had entered in deed — -Litt. fee. 419(f) And livery within the view of the land, will under circumftances give the feoffee a feifm in deed as eff ¿tually as an a&ual entry. There are therefore cafes in which the iaw gives the party a conftruttive feifln in deed : they are founded upon this plain risa- *68 ion, that cither the claim is mads fufficiently notorious by an a#ual entry into part, of which the vicinage can take notice, or the party has done all that under the circumftances of the cafe he was bound to do — Lex non cogxtfefead vana aut impojfibUia. The fame is the refult of conveyances deriving their effedt underthe ftatute of ufes; for there, without actual entry or lively of feifin,the bargainee has a complete feifin in deed — Com. Dig, Ufes (B.i,I.) Cro. Eliz 46 — -1 Erwin Dig. 12 — Shep Tou, 223, &.c. — -Har. Co* Litr. 271. And the Kentucky a£t(g) refpeaing conveyances, which is in fub-fiance like the ftatute of ufes, gives to private deeds the fame legal effeft. Ithas however been fupposed in argument, that not only an aitual ieifin or complete inveftiture of'the land, but alio a perception of the profits, or as it is technically called, a taking of the efplees, is abfoiutely neceffary to fupporfc a writ of right. It cannot, however, be admitted that the taking of the ef-plees is a traversable averment in the count: it is but'evidence of the feifin ; and the feifin in deed once eftabliihed, either by a -pedis pojjejjio or byconftruc-tioñ of law, the taking of the efplees is a rteoeiTvry inference of law. If, therefore, a feifin be eftabliihed, alihaugh the land be leafed for a term of years and thereby the profit belong to the tenant, ftillthe legal intendment is that the efplees follow the feifn; and fo it would be although a mere trefpaffer, without claiming title, Ihould actually take the profits during the time of the feifin alleged and proved, and indeed of certain real property, as a barren rock, a complete feifin may exift without the exiftenc» of efplees.,
The refutt of this reafoning is,'that whenever there exift the union of title and feifin in deed, either by actual entry and livery of feifi/i or by intendment oflaw, as by conveyances under the ftatute of ufes, or in the other inftances which have been before ftated, there the efplees are knit to the title, fo as to enable the party to maintain a writ of right 5 and it will be found extiemely difficult to maintain that a deed which by the lex loci convsys a perfect title to wafte and vacant lands without further ceremony, will not yet enable the grantee tofupport that title by giving him the higheft remedy applicable to it, without an aéfual entry. ,
Let us now confider liow far a perfefl title to wafte and vacant lands can be confidered as having paffed by a patent under the land law of Virginia of *779(h). It is argued that fuch a patent conveys only a right 01 title of entry, until confummated by a&ual poffirffi >n, giVes the patentee no actual ih-vefticure or ftifin of the land, and it is likened to the cafe of a patent from the crown* Sop^e countenance is lent by authority to this pofition, fo far as refpetts patents from the crown ; but a careful examination will be found by hó means to eftablifh its correilnefs. No livery of feifin is neceffary to perfect a title by letters patent 5 the grantee in fuch cafe takes by matter of record, and the law deems the grant of record of equal notoriety with an a&ual tradition of the land in the view of the vicinage. ■ The contrary js the faét as to feoffments ; the deed is inoperative without livery of feifin. This difference alone would feem to carry a pretty ftrong implication that actual feifin paffed by operation of law on a patent from the crown 3 for it is the union of tight and feifin that conftítutes a perfeft title ; and when once the law has declared a title perfect, it malt include every thing neceffary to produce that effect, ,
Accordingly we find it expreflly held in Barwick's cafe, 5 Co. 94, that letters patent under the great feal do amount to a kuery in law. What is a livery in law, but fuch an ail as in legal contemplation amounts to a delivery of feifin ? If, for inftance, a feoffment include divers parcels of land in the *69 fune county, livery of feifin of one parcel ¡n the nameof the whole, is livery of all not in an adverfepoflfeilim This, Therefore, as to all the parcels except that whereof livery isa&ually made, is bat a livery in law, and yet to all intents and purpoles it is as effectual as livery in deed. And it was upon the footing of this do&rine, that in Harwich's cafe.the court held that the conveyance ofafreehoJd by letters patent to cqmmence >n future, was void,-as much as if the conveyance had been hy feoffment; bccaufe in neither cafe could there be a prefenr delivery of a future freehold eftate ; the livery muft operate at the time when it is made, or not at all, .It is not therefore admitted by this court that letrers patent of fhe crown do not convey a perfedl title where there is no interfering poflefiion.
But even admitting it were otherwife, ftill we think a patent under the land law of Virginia muft be confiiered as a datare grant, which is to have all the legal effects attached to it which the legiflature intended. It cannot be doubted chat the legiflature were competent to give their patentees a perfeét title and pofleflion, without attual encry, Have they done fo ? We think that it is impofilble, looking at the language of their a£ts, or the ftate of the country, to doubt that the whole legal eftate and feifin of the commonwealth in the lands, pafTed to the patentee upon the ifiuingofhÍ3 patent, in as full an extent and beneficial a manner, and (íubjeél only to the rights of the commonwealth) as the commonwealth itfelf held them; At the time of the palling of the a£t of 1779» Kentucky was a wildernefs: it was the haunt of favages and beads of prey. A6fcual entry and pofleffion was imprifticable ; and if pra&icable ft could anfwer no beneficial purpofe ; it could create no notoriety 5 It could evidence to no vicinage a change of the property. An entry would, therefore, have been a vain, ufelefs and perilous a<ft, and if there ever was a cafe in which the maxim would apply, that the law does not oblige to vain or impofilble things, we think it is íuch a one as the prefent. There is no pre-tence chat the legiflature have exprefsly made an entry $ prerequifite to the completion of the title- Such a prerequifite, if it exift 3t all, muft arife from mere implication only, and und?r circumftances which would renderit nuga* tory or absurd. We do not Therefore feel at liberty t j infert^h the operation of the grant a limitation which the law has not itfelf interpofed. And this leads us to fay, that even if at common law an a£lual pedis pojjejfio) followed up by an actual perception of the profits, were neceflary to maintain a writ of right, which we do not admit, the dpdtrine would be inapplicable to the wafte and vacant lands of our country. The common law itfelf iit many cafes difpenfes with fuch a rule, and the reafon of the rule itfelf ceafes when applied to a mere wildernefs. The objcdt of the law fn requiring adlual feifin, was to evince notoriety of title to the neighobrhood, and the confequent bur-thens of feodal duties In thefimplicicy.of ancient times, there were no means of afcertaihing titles but by the vifible feilin,'and indeed there was no other mode between fubjedts, of palling title, but livery of the land itlelf, by the fymbolical delivery of turf and twig. The moment that a tenant was thus feifed he had aperfedl mveftiture, and if oufted, could maintain his a&ion in the realty, although he had not been long enough in the pofleflion even to .touch the efplees. The very obje& of the rule, therefore, was notoriety, to prevent fraud upon the lord and upon the other tenants. But in a mere uncultivated country, in wild and impenetrable woods, in the fullen and folitary haunts of beafts of prey, what notoriety could an entry, a gathering of 'a twig or as acorn, convey to civilifed man at the djftance of hundreds of miles ? \ 5Fhe reafon of the rule could not apply, to Cucha ftate of things, an ácejfanu.ra* *70 tione cejfat et lex. We arc entirely fatis.fied, that a convey*nce ef wild and vacant lands gives a conftruftive feifin thereof in deed to the grantee, and attaches to him all the legal remedies incident to the eftate.(i) A fortiori this principle applies to a patent, fince at the common law it imports a livery in law : upon any other conftruftion, infinite mifchiefs would refult. Titles by defcenr, and devife, and purchafe, where the party from whom the tivle was derived was never in aftual feifin, would, upon principles ofthe common law, be utterly loft.
VI, I<¡ theeldeft patent obtained as aforesaid for the land in controverfy^ fufficient proof of the heft mere right; or can the demandant be put on the proof, that intheincípiency, andrni.ho diff5.rent fteps neceffary to complete his title, he has complied with iherequifit:-s prefcribed by the afts, the one entitled “ an aft for adjofti.ngand fettling che titles of claimants to unpatent-ed lands, under the pre'.ent and f rmer government, previous to the eftabliihment ofthe commmweahh’s land-office,’’ and the other entitled “ an aft for eftablilhing a land-office and alcerfaining the terms and manner of granting wafte and unappropriated landV(k) and the fuhfeqoent laws of Virginia on the fame fubjeft ¡n force at the time of the ereftion ©f the diftrift of Kentucky into a feparate ftate ?
VII* If 1 he demandant is not compellable to fhew any thing beyond hta patent, can the tenant holding "he younger patent be permitted to impeach the demandant’s patent, to ihew the incipiency and completion of his own title, and the relative merit of his own and the demandant’s title ?
As to ihefixth queftion, we are of opinion that in Kentucky a patent is the completion of the legal title of the parties 5 and it is the legal title only that can come in controverfy in a writ of right. The previous ft.ages of title are merely equitable, which a court of chancery may enforce, but a court of common jaw will not entertain. In this opinion we adopt the principles which the courts of Kentucky have been underftood uniformly to fanftion. And this opinion is alfoan anfwer to the ieventh queftion,
VIII, Can the tenant defend himfelf by (hewing an older and better exift« ing title than the demandant’s in a third perfon ?
As to tne eighth queftion, we are of opinion that a better fubfifting adverfe title in a third perfon, is no defence in a writ of right \ that writ brings into controverfy only the mere rights of the parties to the fuit-
IX, Where feveral tenants, claiming in feveralty, are joined in a writ of right, Ihould the finding of the jury be feveral, of the mere right between the. demandant and each tenant, or may it be a general finding that the demandant has the beft mere right ?
As to the ninth queftion, we have already exprefted an opinion that tenants claiming different parcels of land by diftinft titles, cannot be joined in a writ of right. If, however, they omit to plead in abatement, but join the mife, it is an admiffion that they are joint tenants of the whole, and the verdift, if for the demandant, for any parcel of the land, may be general, that he hath more mere right to huid the fame than the tenants, and if of any parcel for the tenants that they have more mere right to hold the fame than the demandant.
X, The commonwealth having fi.ft made and granted a patent to the de-mandant, and afterwards by his patent granted a part of the fame land to the defendants, who entered and obtained the fiift-fofleflion $ the demandant after-wards entered and took pefleffion, under his own grant, of that part of his land not within the patent of the laft grantee : .who has the better mere right to the lands where the patents conflict outüde ofthe actual clofe of the laft grantee i.
*71 As to the tenth queftion, the general rule is, that if a man enter into lands, having title, his feifin is not bounded by his actual occupancy, but is held to be coextenfive with his title. But if a man enter without title, his ftifin is confined to his poffeffion by metes and bounds. In the cafe put by the court below, the* firft patentee had the better legal title, and his feifin, prefently* by virtue of his patent, gave him the beft mere right to the whole land, upon the principles which we have already ftated : a fortiori he muft have the beft mere right to the land nor included in the actual clofe of the fecond patentee $ foi by conftruction qf law, he has the eldeft feifin as well as the elder patent.
XI. Will an entry upon part, and taking the efplees under the eldeft grant from the commonwealth, and making claim to the whole land included within the bounds of the elder grant, autborife the demandanfto maintain his writ of right againft the tenants holding a previous poffeffion under a younger patent interfering with the elder grant ?
As to the eleventh point, we are ofopinicn that if a man having title to land, enter into a part in'"the name of the whole, he ^s, upen common law principles, adjudged in feifin of the whole, notwithstanding an adverfe feifin thereof $ but if the land be in the feifin of feveral tenants, claiming different parcels thereof in feveralty, an entry into the parcel held by one tenant will not give feifin of the parcels held by the other tenants, but there muft.be an entry mto each — Co. Lit. 252, b. By a parity qf reafon, an entry into a parcel which is vacant, will not give feifin oí a parcel which is, In an adverfe feifin ; but an entry into the laff parcel, in the name of the whole, will enure asan entry into the vacant parcel. It does not appearin' the queftion put by the court below, into which parcel the entry is fuppofed to be made,
Sufch are the unanimous opinions of this court; which are to be certified to She circuit court of Kentucky.

 Booth on Real Act. 28, 29, 31—Fitz N. B. vol. 1, fol. 1, E.

 Acts of Kentecky 1798, Litt. E L. K. 2 vol. ch. 50, p. 87.

 Act of Kentucky 1798, 2 Littell, cb. 1 p. 3.

 Acts of Kentucky 1796, 1 Littel, cb. 208 p. 381.

 3 Atkins 469, De Grey, &c. v. Richardson-7 Vinner Descent (K) pla 34. p. 585-Co Lit 15-3 Wilfon 516, Newman versus Newman.

 Vide also Sect. 429, 430.

 1 Lit. E. L. K. cb. 278, Sec. 13, p. 572.

 Chan. Rev. cb. 13, p. 94- 1 Littell cb. 261 p. 415.

 Accord Clay vs. White, 1 Munf, 162.

5) Chan. Rev. cb. 12, 13, p. 50-4 —1 Litt, E. L. K. cb. 261,p. 385.